NOT DESIGNATED FOR PUBLICATION

No. 129,196

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

K.L.,
*Appellee*,

and

B.B.,
*Appellant.*

MEMORANDUM OPINION

Appeal from Geary District Court; KEITH L. COLLETT, judge. Oral argument held July 21, 2026. Opinion filed August 14, 2026. Affirmed.

*Richard A. Pinaire*, of Hoover, Schermerhorn, Edwards, Pinaire & Rombold, of Junction City, for appellant.

*V. Linnea Alt*, of Law Office of V. Linnea Alt, Chtd., of Junction City, for appellee.

Before MALONE, P.J., HURST and COBLE, JJ.

PER CURIAM: B.B. appeals the district court's order finding that it lacked jurisdiction to rule on his post-divorce motion to modify parenting time under the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA) because B.B. and his ex-wife K.L., f/k/a K.B., along with their two minor children, no longer resided in Kansas when the motion was filed. Based on the record submitted for our review, we affirm the district court's judgment.

1

B.B. and K.L. were married in Missouri in January 2015. Two children were born of the marriage. On April 29, 2022, K.L. petitioned for divorce in Kansas. The petition alleged that both she and B.B. were service members in the United States Army who, at the time, resided in Fort Riley. B.B. never responded to the petition, and the district court entered a default decree of divorce on July 25, 2022. Under the decree, the parties shared joint legal custody of the children with K.L. having primary physical custody. The decree included an order requiring that B.B. pay child support to K.L.

In August 2023, B.B. filed a proposed amended parenting plan where he stated that he had moved to Georgia and that the children and K.L. had moved to Hawaii. B.B. moved to modify parenting time and child support on September 7, 2023. K.L. responded with an "Objection to Jurisdiction" and asserted both parties had relocated out of Kansas due to their obligations to the military. K.L. alleged that she and the children had moved to Hawaii on April 4, 2023, and B.B. had relocated to Georgia in December 2022. Based on those assertions, K.L. claimed that the district court lacked jurisdiction to modify parenting time under K.S.A. 23-37,202(a)(2). As for child support, K.L. asserted it would be "more convenient" to have that issue resolved in Hawaii. K.L. filed a "Jurisdictional Argument" in February 2024 and argued in greater detail that the district court lacked continuing exclusive jurisdiction to modify orders pertaining to child custody, placement, or parenting time after both parents and the children had moved from Kansas. B.B. did not respond to the jurisdictional argument.

The district court held a hearing on March 27, 2024. Counsel appeared in person, and both parties appeared by Zoom. The district court found by agreement of the parties that it retained jurisdiction to rule on child support and addressed whether it had jurisdiction to rule on parenting time. Neither party offered evidence on the issue, but the district court took judicial notice of the court file at B.B.'s request. After hearing

2

arguments of counsel and confirming that both parties and the children lived outside of Kansas, the district court observed: "There is no longer a shred of evidence in Kansas about what is in the children's interest." The district court found: "Both parties having left the state, and both parties having left the state for more than six months, I believe that the Uniform Child Custody Jurisdiction Act deprives this Court of jurisdiction to make custodial—to make parenting-plan orders." The district court concluded: "I'm declining—I'm finding that I do not have jurisdiction to address parenting time issues." The district court scheduled the child support issue to be resolved at a later hearing.

The district court held another hearing on May 29, 2024, and addressed B.B.'s motion to modify child support. B.B. and K.L. testified largely in the context of child support, but some of the testimony sheds light on parenting time matters and the children's living situation in Hawaii. B.B. testified that he exercised all of his parenting time in 2023 in Missouri at his parents' house during spring break, summer, and Christmas. He testified that K.L. moved with the children to Hawaii sometime in April 2023. K.L. provided various expenses for the "before and after school" care for the older child and daycare for the younger child incurred from April 2023 through December 2023. The district court made findings and entered orders adjusting child support, but the child support orders are not pertinent to this appeal.

The district court did not file a journal entry and order denying the motion to modify parenting time until March 20, 2025. The journal entry stated: "The Court finds that since Father moved to Georgia in December 2022 and Mother and the children moved to Hawaii in April 2023, the Court does not have subject matter jurisdiction to enter any orders as they pertain to custody, placement and parenting time modification pursuant to K.S.A. 23-37,202(a)(2)." B.B. timely appealed from that order.

3

The sole issue on appeal is whether the district court erred in ruling that it lacked jurisdiction under the UCCJEA to modify parenting time. Although the district court's journal entry and the parties' briefing refers to "subject matter" jurisdiction, the issue involves whether the Kansas court retained personal jurisdiction over the children to modify parenting time after the children had moved from Kansas. The thrust of B.B.'s argument is that although Kansas was no longer the children's home state when he moved to modify parenting time in September 2023, no other state qualified as the children's home state at that time, so Kansas retained what B.B. terms as "concurrent jurisdiction" where proceedings had not been initiated in any other state to challenge jurisdiction in Kansas. K.L. contends the district court did not err in finding that it lacked jurisdiction to modify parenting time, focusing on the language in K.S.A. 23-37,202(a)(2).

K.S.A. 23-3218(a) controls the modification of "any prior order of custody, residency, visitation and parenting time" and makes those motions subject to "the provisions of the uniform child custody jurisdiction and enforcement act (K.S.A. 23-37,101 through 23-37,405)." Thus, B.B.'s motion to modify parenting time is subject to the provisions of the UCCJEA. See *In re Marriage of Ruth*, 32 Kan. App. 2d 416, 419-20, 83 P.3d 1248 (2004) (applying the UCCJEA to a motion to modify parenting time). The UCCJEA seeks to avoid jurisdictional competition with courts in other states and does so through rules that "generally limit jurisdiction related to a child's custody and care to '*one state at a time*.'" *In re S.C.*, 65 Kan. App. 2d 128, 134-35, 561 P.3d 538 (2024) (quoting *In re A.W.*, 60 Kan. App. 2d 296, 302, 493 P.3d 298 [2021]). Courts must undertake a UCCJEA analysis in cases with interstate connections. *In re S.C.*, 65 Kan. App. 2d at 136. Every state but Massachusetts has adopted a similar uniform act. *In re S.C.*, 65 Kan. App. 2d at 135. Hawaii has codified the UCCJEA in Haw. Rev. Stat. § 583A-101 et seq.

4

Whether jurisdiction exists is a question of law subject to unlimited review. *City of Wichita v. Trotter*, 316 Kan. 310, 312, 514 P.3d 1050 (2022); *In re S.C.*, 65 Kan. App. 2d at 134 (applying unlimited review to a question of jurisdiction under the UCCJEA). Likewise, statutory interpretation presents a question of law subject to unlimited review. *Nicholson v. Mercer*, 319 Kan. 712, 714, 559 P.3d 350 (2024).

The Kansas Legislature has codified the UCCJEA in K.S.A. 23-37,101 et seq. K.S.A. 23-37,201(a) provides four ways a court may acquire jurisdiction to make an *initial* child custody determination:

"(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

"(2) a court of another state does not have jurisdiction under paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under K.S.A. 23-37,207 or 23-37,208, and amendments thereto, and:

(A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

"(3) all courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under K.S.A. 23-37,207 or 23-37,208, and amendments thereto; or

"(4) no court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3)."

K.S.A. 23-37,201(a)(1) refers to the "home state" of the child. K.S.A. 23-37,102(8) defines "home state" as "the state in which a child lived with a parent or a

5

person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding."

After a court has already made a child custody determination, K.S.A. 23-37,202 defines exclusive, continuing jurisdiction and provides in part:

"(a) Except as otherwise provided in K.S.A. 23-37,204, and amendments thereto, a court of this state which has made a child-custody determination consistent with K.S.A. 23-37,201 or 23-37,203, and amendments thereto, has exclusive, continuing jurisdiction over the determination until:
(1) A court of this state determines that neither the child, the child's parents, and any person acting as a parent do not have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or
(2) a court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state."

K.S.A. 23-37,202(b) provides: "A court of this state which has made a child-custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under K.S.A. 23-37,201, and amendments thereto."

Returning to our facts, both parties acknowledge that Kansas was no longer the children's home state when B.B. moved to modify parenting time in September 2023. This case presents somewhat of an unusual situation because although Kansas was not the home state of the children in September 2023, no other state met the definition of home state because the children had not resided in Hawaii for six consecutive months before B.B. filed his motion in Kansas. B.B. focuses on this fact and argues that Kansas retained "concurrent jurisdiction" to modify parenting time where proceedings had not

6

been initiated in any other state to challenge jurisdiction in Kansas. The only legal authority B.B. cites to support his claim is a 2001 memorandum from the U.S. Department of Justice with guidance that a court of one state may not modify a child custody order made by another state unless it qualifies as the child's present home state.

B.B.'s argument runs counter to the plain language of the UCCJEA governing jurisdiction. There is no language in the UCCJEA that supports B.B.'s claim that Kansas retains "concurrent jurisdiction" until another state challenges jurisdiction. Regardless whether another state might challenge jurisdiction, Kansas still needs its own statutory path to jurisdiction under the UCCJEA before the district court could consider B.B.'s post-divorce motion to modify parenting time.

In finding it lacked jurisdiction to modify parenting time, the district court focused on the language in K.S.A. 23-37,202(a)(2) addressing exclusive, continuing jurisdiction and the undisputed fact that when B.B. filed his motion, neither parent nor the children resided in Kansas. The district court also found there was "no longer a shred of evidence in Kansas about what is in the children's interest." On appeal, neither party disputes the district court's legal conclusion that it lacked exclusive, continuing jurisdiction under K.S.A. 23-37,202(a). But the district court's analysis was incomplete because it failed to consider K.S.A. 23-37,202(b), which provides that when a state has made a child custody determination and no longer has exclusive, continuing jurisdiction, the court may modify its order if it has jurisdiction to make an *initial* determination under K.S.A. 23-37,201. The parties overlook any analysis under K.S.A. 23-37,201, as well.

Exercising our unlimited review of the record the parties have submitted, we will briefly analyze whether the Kansas district court had jurisdiction to make an initial determination of parenting time under K.S.A. 23-37,201(a) when B.B. filed his motion for modification in September 2023. Under K.S.A. 23-37,201(a)(1), Kansas was not the children's home state when B.B. filed his motion. Still, this subsection would give the

7

district court initial jurisdiction if Kansas was the home state within six months before the motion was filed and the child is absent from the state, as long as a parent continues to live in Kansas. But B.B. no longer resided in Kansas when he filed his motion, so this subsection does not provide the district court with initial jurisdiction.

Under K.S.A. 23-37,201(a)(2), Kansas would have jurisdiction to make an initial determination of parenting time if another state was not the home state or a home state court had declined to exercise jurisdiction *and* the child and at least one parent have a "significant connection" with Kansas and substantial evidence is available in Kansas concerning the child's care, protection, training, and personal relationships. This subsection does not apply based on the record submitted. B.B. and K.L. were married in Missouri. They only lived in Kansas in the first place because the United States Army transferred them to Fort Riley. When B.B. filed his motion, the children had lived in Hawaii for 5 months and were attending school and daycare there. The parenting time B.B. exercised in 2023 was in Missouri at his parents' house. The record does not show that anyone returned to Kansas after leaving, nor does the record show that any extended family resides in Kansas to visit in the future. These facts support the district court's finding that there was no evidence in Kansas concerning the children's best interests.

Under K.S.A. 23-37,201(a)(3), Kansas could exercise jurisdiction to make an initial determination of parenting time if all courts having legal jurisdiction declined to exercise jurisdiction because Kansas is the more appropriate forum. Under K.S.A. 23-37,201(a)(4), Kansas would have initial jurisdiction if no court of any other state would have jurisdiction under the criteria specified in the UCCJEA. B.B. cannot establish that either of these subsections apply because he did not try to file his motion for parenting time in Hawaii, which would appear to have jurisdiction under Hawaii's version of subsection (a)(2) of the uniform statute. Had B.B. moved for parenting time in Hawaii and Hawaii declined to exercise jurisdiction, then Kansas would have jurisdiction to address the motion under either subsection (a)(3) or subsection (a)(4).

8

In sum, the district court properly found that because the parents and children no longer resided in Kansas when B.B. moved for parenting time, Kansas did not have exclusive, continuing jurisdiction under K.S.A. 23-37,202(a)(2) to address the motion. And the record shows that Kansas had no jurisdiction under K.S.A. 23-37,201(a) to make an initial determination of parenting time when B.B. filed his motion. Thus, we conclude the district court did not err in finding that it lacked jurisdiction under the UCCJEA to rule on B.B.'s post-divorce motion to modify parenting time. See *Gannon v. State*, 302 Kan. 739, 744, 357 P.3d 873 (2015) (finding district court's judgment will be upheld if it is correct for any reason).

Affirmed.